**In re: EXXON VALDEZ,**

**Lynn Lincoln Sarko, Administrator of the Exxon Qualified Settlement Fund, Defendant–Appellee,**

**Thomas Amodio, Special Master, Appellee,**

v.

**Linda Killgrove; et al., Real Parties in Interest–Appellants.**

No. 05–35287.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 8, 2007.*

Filed April 3, 2007.

* This panel unanimously finds this case suitable for decision without oral argument. *See*   Fed. R.App. P. 34(a)(2).

David W. Oesting, Esq., Karmyn Olmstead, Davis Wright Tremaine, LLP, Anchorage, AK, Defendant–Appellee.

Linda Killgrove, Olympia, WA, pro se.

Brenda Cleveland, Shelton, WA, pro se.

Gregory Carl Mattocks, Yelm, WA, pro se.

Before: SKOPIL, FERGUSON, and LEAVY, Circuit Judges.

## MEMORANDUM **

Harry Mattocks ("Mattocks") was the original owner of a salmon drift permit and a drift net vessel. In February 1989, Mattocks and Andrew V. Halvorsen ("Halvorsen") signed a handwritten agreement in which Mattocks agreed to sell Halvorsen the permit and vessel for $180,000. After the Exxon Valdez oil spill, the two men renegotiated and entered into a revised agreement ("the agreement") on April 4, 1989. The agreed price was reduced to $120,500.

In 1994, Mattocks filed with the Exxon Valdez Qualified Fund ("Fund") administrator a claim for the $59,500 he lost when he sold the vessel and permit at a discount after the oil spill. The Fund administrator determined that Mattocks was due only $137.41. When this amount was issued to him, he rejected it as insufficient. Mattocks died in 1998 without resolving his claim.

In 1999, the heirs of Mattocks ("Mattocks Heirs") filed a supplemental claims form for lost income, permit devaluation, and vessel devaluation pursuant to the court-approved Plan of Distribution of Allocations to the Prince William Sound Salmon Drifter Claim Category ("S03E Plan"). The administrator of the Fund denied all three claims. The court-appointed special master found that the sale occurred on April 20, 1989, and granted permit and vessel devaluation shares prorated to that date. The District Court adopted the special master's findings. The Mattocks Heirs appealed.

## DISCUSSION

A lower court's findings of fact shall not be set aside unless clearly erroneous. Fed.R.Civ.P. 52(a). The findings of a special master, to the extent that the lower court adopted them, shall be considered the findings of that court. *Id.* We therefore review for clear error.

Based on the S03E Plan, a permit holder's share of the Fund was to be proportional to the projected devaluation during ownership between March 24, 1989 and June 30, 1995. A claimant who owned a vessel at the time of the spill and then sold it would be allotted a prorated share if he or she sold the vessel during the sub-fund period. The issue in this case is when the vessel and permit changed hands.

There is sufficient evidence in the record to support the District Court's conclusion that the vessel and permit were sold on

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

April 20, 1989. The special master's finding of the date of sale for the permit is based on the certificate issued by the Alaska Commercial Fisheries Entry Commission ("CFEC"), authorizing Halvorsen as the holder of the permit on April 20, 1989. Two days prior to that, the State Department of Commerce and Economic Development ("DCED") mailed a treasury warrant in the amount of $99,499 to Mattocks on behalf of Halvorsen as final payment for the permit.[1]

The Mattocks Heirs contend that Halvorsen never performed his obligation under the agreement, so ownership never changed hands. They argue that the actual price of the permit and the vessel combined was $180,000, and that the reduced price of $125,500 was included in the agreement only so Halvorsen could obtain a loan with DCED.[2] This claim is contradicted by Mattocks's own statement that the oil spill was the direct cause of the reduction in the sale price. In the alternative, the Mattocks Heirs argue that ownership of the permit did not change until March 2, 1992, when Halvorsen executed a First Preferred Ship Mortgage on the vessel for the purpose of securing the payment of $99,999. The argument that the $99,999 was to be used to pay for the permit has no evidentiary basis.

For the foregoing reasons, the District Court's determination was not clearly erroneous.

**AFFIRMED.**

1. Additional evidence suggests that the vessel and permit were sold in April or May 1989, even if not on the exact date of April 20, 1989. CFEC Landing Records indicate that Halvorsen made landings with the permit in May 1989. On the claim form Mattocks filed in 1994, he stated that the sale of the vessel and permit occurred on April 4, 1989.

2. Pursuant to Alaska Stat. § 16.10.320(a)(4), DCED may not offer any loan that exceeds 80 percent of the appraised value of the collateral used to secure that loan.